UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-CV-23218-MORENO/GOODMAN

KIM E. BULLARD,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Kim E. Bullard and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 13; 14]. The Commissioner's summary judgment motion also served as her opposition response to Bullard's motion. [ECF No. 15]. Bullard filed a response to the Commissioner's summary judgment motion [ECF No. 16], which also served as his reply [ECF No. 17].

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Bullard's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.      Procedural Background

On June 16, 2016, Bullard applied for a period of disability and disability insurance benefits ("DIB"), alleging a disability with an onset date of March 31, 2016. (R. 326-27; 238).[1] The Commissioner denied the application initially and on reconsideration. (R. 262-64; 266-70). After a hearing on July 12, 2018 (R. 11), Administrative Law Judge Rebecca Wolfe (the "ALJ") concluded that Bullard was not disabled. (R. 19). The Appeals Council denied review of the ALJ's decision. (R. 1-3).

Bullard appealed the ALJ's decision to the District Court and it was remanded to the ALJ for a rehearing based on an error in assessing Bullard's past relevant work. (R. 881-99). On remand, the ALJ held a hearing on May 5, 2021 (R. 795) and again concluded that Bullard was not disabled. (R. 802). The Appeals Council denied review of the ALJ's decision. (R. 792-94). The matter is now ripe for review.

## II.      Factual Background

Bullard was sixty-one years old on the alleged onset date of March 31, 2016. (R. 352). Bullard completed the 12th grade, can speak English, and stopped working on

---

[1]      Citations to ("R. ___") refer to pages of the administrative record transcript. [ECF No. 19].

March 31, 2016, his onset date, "[b]ecause of [his] condition(s)." (R. 355-56). Before his onset date, Bullard spent more than twenty years in waste collection, working eight hours a day, five days a week. (R. 357). His duties required him to pick up garbage cans from the curbside and empty the can into the garbage truck. *Id.*

Bullard alleged disability due to neck stiffness, right lumbar radiculopathy, cervicalgia, anterior listhesis, lumbar spine, disc protrusion, abnormalities of the neurologic, and fluid in the facet joint cyst. (R. 356). At the hearing, Bullard testified that he lives alone, needs assistance with most activities, and is in a constant state of pain due to his back issues. (R. 825-30). Bullard is compliant with his medication and attends physical therapy due to a car accident suffered in 2021. (R. 831-34).

## III.    Applicable Legal Standards

### A.    *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.    **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.    **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.    **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then

determine:

4.   **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.   **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the

decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.    The ALJ's Findings

In denying Bullard's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims. (R. 795-806). At step one, the ALJ concluded that Bullard had not engaged in substantial gainful activity between March 31, 2016, the alleged onset date, through June 30, 2020, the date he was last insured. (R. 797).

At step two, the ALJ concluded that, through the date he was last insured, Bullard had the following severe impairments: degenerative disc disease (with lumbar pain, radiculopathy, and spondylolisthesis) and arthritis of the hand. *Id*.

At step three, the ALJ concluded that, through the date he was last insured, Bullard did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 798-99). Next, the ALJ determined that Bullard has the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) except that the claimant could occasionally climb ramps and stairs. The claimant could never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crawl, and crouch. He could frequently balance. The claimant was right-hand dominant and could frequently handle and finger with the left upper extremity.

(R. 799).

At step four, the ALJ concluded that Bullard is not capable of performing any of his past relevant work. (R. 804).

Finally, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Bullard can perform, including laundry worker and dietary aide. (R. 805). Accordingly, the ALJ found that Bullard was not disabled under sections 216(i) and 223(d) of the Social Security Act from June 16, 2016 through the June 30, 2020, the date he was last insured. (R. 806).

V.      **Analysis**

Bullard argues that the ALJ made two separate errors assessing his claims. First, Bullard claims the ALJ's evaluation of the medical source opinions is based on flawed rationale. Second, Bullard argues the ALJ's decision to discredit his subjective allegations is not supported by substantial evidence.

With respect to the first argument, Bullard contends that the ALJ employed inconsistent or inappropriate reasoning when assigning weight to the medical source opinions. [ECF No. 13]. According to Bullard, the ALJ overly weighted the opinions of Dr. John Santamaria, a State Agency medical consultant, and Dr. Jon D. Donshik, one of Bullard's medical providers, and undervalued the opinions of Dr. Roy Cardoso and Dr. Pierre Blemur, two of Bullard's medical providers. The Commissioner disputes these arguments, contends that Bullard's view of the law is too expansive, and accuses him of cherry-picking facts in an attempt to undermine the ALJ's decision.

In his second argument, Bullard focuses on testimony and record evidence which he alleges contradicts the ALJ's finding that "Mr. Bullard's allegations [are] 'not entirely

consistent with the medical evidence and other evidence in the record.'" [ECF No. 13 (quoting (R. 799))]. In her response, the Commissioner lists all the evidence she believes supports the ALJ's decision.

For the reasons discussed below, the Undersigned rejects Bullard's arguments and finds merit in the Commissioner's position.

### A.    *The ALJ Properly Assessed the Medical Opinion Evidence*

Bullard challenges the weight the ALJ afforded to his three treating sources and one non-treating source. As summarized by Bullard in his Reply, he argues that "[t]he problem lies not with the consideration of examining versus nonexamining sources, but rather with the inconsistent application of the ALJ's standards for supportable opinions." [ECF No. 16]. In the Commissioners view, however, Bullard's challenges are "generalized" and "fail because they are inapposite and overlook the ALJ's proper and supported rationale under the facts of his case." [ECF No. 14 (emphasis removed)].

Bullard's claim was filed on June 16, 2016. For claims filed before March 27, 2017, ALJs assess medical opinions under a different set of criteria than those filed on or after March 27, 2017. 20 C.F.R. § 416.927 ("For claims filed (see [20 C.F.R.] § 416.325) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 416.920c apply.").

Under the pre-March 27, 2017 regulations, the ALJ is required to give the medical opinions of treating physicians substantial or considerable weight unless good cause

justifies a contrary finding. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." (quotation omitted)). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*

In assessing the medical opinion evidence, the ALJ discussed each doctor individually and accorded them the following weights: (1) Dr. Santamaria (great weight); (2) Dr. Cardoso (limited weight); (3) Dr. Blemur (little weight); and (4) Dr. Donshik (significant weight). (R. 802-04). Bullard attacks the ALJ's reasoning as to each individual doctor, referring to it as "flawed," and makes a general argument that the ALJ's reasoning was, at times, internally inconsistent. [ECF No. 13].

First, Bullard claims the ALJ erred in affording great weight to the opinion of Dr. Santamaria. Bullard claims that Dr. Santamaria's opinion was "outdated" and highlights the fact that Dr. Santamaria never personally treated him, an opinion flaw which he alleges was compounded by Dr. Santamaria's reliance on a "mostly incomplete administrative record." [ECF No. 13, p. 13]. Bullard argues that these aspects of Dr. Santamaria's opinion were not appropriately considered by the ALJ, and, because of

these flaws, Dr. Santamaria's opinion cannot constitute substantial evidence or serve as a basis to discredit the opinions of Bullard's treating doctors.

As the Commissioner notes in her response, the ALJ identified the ample evidence in the record supporting her evaluation of Dr. Santamaria's opinion. [ECF No. 14]. Specifically, the ALJ found that Dr. Santamaria's opinion was consistent with objective medical findings that Bullard had "5/5 key pinch strength, intact sensation, and unremarkable motor function on the left *despite* left CMC arthritis . . . as well as the evidence of walking without difficulty, equal reflexes, no deficit in coordination, full cervical spine motion, and no sensory or motor deficits involving the lower extremities." (R. 802-03). Further, the ALJ found the opinion was corroborated by Bullard's lack of surgery during the relevant time period, as well as the hearing level evidence that Bullard maintained a normal gait without using a cane, had full musculoskeletal motion, and no muscle asymmetry or atrophy. (R. 803).

Next, Bullard challenges the limited weight the ALJ afforded Dr. Cardoso's opinion that he should "avoid heavy grip if possible." [ECF No. 13]. According to Bullard, this opinion relates to a "critical issue" in this case, which is "whether he can sustain the requirements of medium exertional activity, 'lifting no more than 50 pounds at a time with frequent lifting or carrying or objects weighing up to 25 pounds,' as defined in 20 C.F.R. 404.1567(c)." *Id.* at 14.

Bullard claims that the ALJ's decision to discredit the opinion was based on flawed rationale -- specifically, her reliance on only a few of Dr. Cardoso's treatment notes and the consideration of Dr. Santamaria's opinion as corroboration. In support of his argument, Bullard relies on records from Dr. Cardoso, which Bullard claims support the following summary:

> [M]ild swelling, deformity, tenderness, grinding, and subluxation of the left CMC thumb joint . . . left thumb CMC arthritis . . . Mr. Bullard's report of ongoing left hand pain . . . and left hand pain of 7/10 in severity with findings of mild welling and deformity at the thumb joint with a positive grind test on examination.

[ECF No. 13].

In response, the Commissioner argues that the ALJ did not fully discount Dr. Cardoso's opinion; instead, he merely discounted it "to the extent Dr. Cardoso meant to suggest a need for limitations beyond the RFC findings [because] such an interpretation would not be well supported by Dr. Cardoso's treatment notes." [ECF No. 14]. As support, the Commissioner relies on the same medical findings identified by the ALJ as sufficient to conclude that any restriction greater than the RFC is unsupported by Dr. Cardoso's treatment notes and is inconsistent with the record as a whole.

Bullard also contests the ALJ's justification for assigning "little weight" to Dr. Blemur's opinions. [ECF No. 13]. Again, Bullard focuses on records from Dr. Blemur and his colleagues that were not explicitly mentioned in the ALJ's analysis. Specifically, Bullard notes that Dr. Blemur provided a statement in support of issuing Bullard a

handicap placard due to Bullard's limited abilities to walk. Bullard also highlights Dr. Blemur's physical capacities report, which noted Bullard's lumbar and spinal issues, "opin[ing] that [Bullard's] conditions had worsened from 2017 to the present" and that he could not perform the duties required by light or medium exertional activity. *Id.*

Bullard then attacks the ALJ's decision to weigh the opinion less due to the "check box" format of the questionnaire, the inconsistencies with the other evidence in the case, and the fact that Dr. Blemur had not personally examined Bullard on all occasions. On this last point, Bullard compares Dr. Blemur's opinion to Dr. Santamaria's -- who never examined Bullard -- and argues that the ALJ's rationale is inconsistently applied.

The Commissioner avers that the ALJ's decision is well supported when viewed in the aggregate. She argues that there is no inconsistency in the ALJ's rationale and that the following discussion by the ALJ constitutes substantial evidence supporting the weight accorded by the ALJ:

> Dr. Blemur offered his opinion analysis on checkbox forms without identifying specific clinical findings to support the level of restriction provided (see 18F/3; 25F). Dr. Blemur also indicated that he or a member of his department treated the claimant from December 9, 2017 through April 21, 2021 (see 25F/1). However, the available records only show that Dr. Blemur himself saw the claimant several times in 2015, 2016, and early 2017 without setting forth objective findings that would support his opinion before seeing him once again much later in April of 2021 after the date last insured. Hence, it appears Dr. Blemur did not see the claimant at all from December 9, 2017 through March of 2020 (e.g., 19F/21, 28, 31; 24F). This opinion is not consistent with the record as a whole, including the opinion from Dr. Santamaria detailed above and the medical records showing that the claimant walked without difficulty, had normal gait and station, could heel and toe walk appropriately, maintained 5/5 key pinch strength,

displayed full cervical spine motion, had no muscle atrophy, had no restriction in lower extremity sensory or motor function, and maintained intact coordination, which has been considered in concluding that the claimant is capable of work within the above residual functional capacity (see 4A; 9F/4-6; 12F/5; 21F/8-9).

(R. 803-04).

In Bullard's final challenge, he argues against the ALJ's decision to afford significant weight to Dr. Donshik's statements that Mr. Bullard had "'reached maximum medical improvement and was employable without restriction.'" [ECF No. 13 (quoting (R. 803))]. Bullard argues that the ALJ's reliance on this statement runs afoul of 20 C.F.R. § 404.1527, which states that "[the ALJ] will not give any special significance to the source of an opinion on issues reserved to the Commissioner," such as whether an individual is "disabled" or "unable to work." [ECF No. 13]. Bullard also argues that this opinion by Dr. Donshik is inconsistent with Dr. Donshik's own medical records and the MRIs.

As a fallback argument, Bullard also claims that Dr. Donshik's opinions might be outdated because, although he requested an updated MRI from Bullard, he did not issue a subsequent finding after receiving the MRI. This, Bullard argues, means "it cannot be assumed that Dr. Donshik's opinion would have remained the same in the context of the updated MRI." *Id.*

The Commissioner disagrees that the ALJ erred in her assessment of Dr. Donshik's opinion. In the Commissioner's opinion, the ALJ properly found that Dr. Donshik's opinion was corroborated by his objective observations and the fact that, despite

Bullard's complaints, he returned to work fulltime in 2013 after his lumbar spine surgery. [ECF No. 14]. The Commissioner also notes that, despite according significant weight to Dr. Donshik's opinion, the ALJ still gave Bullard the benefit of the doubt by using a more-restrictive RFC than called for by Dr. Donshik's without-restriction opinion.

The majority of Bullard's contentions can be grouped into a single argument: the ALJ erred by not considering other evidence in the record. Beyond this general grievance, Bullard relies on claims that the ALJ applied inconsistent rationales or ran afoul of the SSA regulations. The Commissioner, in turn, characterizes Bullard's arguments as "generalized" and says they fail because they overlook the specific rationale used by the ALJ in assessing the facts of Bullard's case. The Commissioner has the better argument.

"The weight a medical opinion receives depends on, among other things, the doctor's examining and treating relationship with the claimant, the evidence the doctor presents to support their opinion, and how consistent that opinion is with the rest of the record." *Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *6 (11th Cir. May 11, 2022) (citing 20 C.F.R. § 404.1527(c)). An "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

An ALJ is permitted to disregard the opinion of a treating source upon a showing of "good cause." *Phillips*, 357 F.3d at 1240. "Good cause" exists where the "treating physician's opinion [is] conclusory or inconsistent with the doctor's own medical records." *Id.* (citation omitted). The Court must affirm the ALJ's finding if it is supported by "substantial evidence," *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citation omitted), and the Court may not "reweigh the evidence, or substitute [its] judgment" for that of the ALJ even if the "evidence preponderates against the [ALJ]'s decision," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (alterations added; citation omitted).

In assessing the doctors' opinions, the ALJ allocated weight based on multiple considerations: (1) the doctor's own treatment records; (2) the opinions of other doctors; (3) consistency with hearing evidence; (4) relationship with Bullard; (5) consistency with other medical records; and (6) how well the opinion was supported or articulated. Although the ALJ did not rely on all of these considerations in every evaluation, each assessment considered multiple factors before reaching a conclusion.

In affording Dr. Santamaria great weight, the ALJ found that his opinion was consistent with

> a review of the record, including the evidence of 5/5 key pinch strength, intact sensation, and unremarkable motor function on the left despite left CMC arthritis . . . as well as the evidence of walking without difficulty, equal reflexes, no deficit in coordination, full cervical spine motion, and no sensory or motor deficits involving lower extremities.

(R. 802-03 (citing R. 256-57)). The ALJ also noted that the opinion was consistent with evidence from the hearing level showing that the claimant was able to walk and move without an assistive device, had full musculoskeletal motion, and no muscle asymmetry or atrophy. (R. 803 (citing (R. 1246-47)). These reasons provide ample justification for affording great weight to Dr. Santamaria's opinion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence).

Likewise, the ALJ's assessment of Dr. Cardoso's statement that Bullard should avoid a heavy grip is also supported by substantial evidence. The ALJ correctly identified that Dr. Cardoso's limiting statement lacked specifics, which decreased its value. *See Clough v. Comm'r of Soc. Sec.*, 813 F. App'x 436, 441 (11th Cir. 2020) (substantial evidence supported ALJ's decision to afford less weight to a doctor's vague opinion). The ALJ further elaborated on her decision, by explaining how the opinion -- if it were interpreted as requiring more restrictive limitations -- was unsupported by Dr. Cardoso's own treatment notes. *Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (good cause existed where the opinion was contradicted by other notations in the physician's own record).

When assessing Dr. Blemur's opinion, the ALJ relied on myriad factors in reaching her conclusion that the opinion was deserving of "little weight." Bullard's attack on the ALJ's reasoning attempts to isolate the factors considered and argue that each of them is

insufficient. In the aggregate, however, the ALJ discredited Dr. Blemur's opinion because (1) the opinions were on checkbox forms, did not identify the clinical findings supporting the conclusions, and Dr. Blemur did not personally see the claimant for many years prior to offering his opinion; (2) the opinion was inconsistent with Dr. Santamaria's opinion; and (3) the opinion was inconsistent with other medical records in the case.

In challenging the ALJ's assessment of Dr. Blemur's opinion, Bullard relies heavily on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019). According to Bullard, the errors present in *Schink* -- that the ALJ applied her reasoning inconsistently and discounted physician questionnaires because they used a check box format -- are both present in this case. However, Bullard reads *Schink* too expansively and ignores the facts in his case.

Here, Dr. Blemur's failure to identify the clinical findings supporting his opinion is uniquely problematic because -- even in the treatment notes identified by Bullard -- Dr. Blemur and his staff's treatment notes contain contradictory information. For example, in the same record where a doctor recommended that Bullard go to the emergency room, there is also a notation that Bullard's extremities were normal. *See* (R. 787). Likewise, despite opining that Bullard's condition had worsened from "2017 to date," Dr. Blemur's records reflect improvement from 2016 to 2017, *see* (R. 1216 (abnormal extremities on 11/3/16); R. 1213 (normal extremities on 1/25/17); R. 1203 (normal extremities on 9/25/17)),

and intermittent improvement and deterioration during later years, *see* (R. 1197 (abnormal extremities on 3/1/18); R. 1191 (normal extremities on 6/11/18)).

Moreover, these are not the only issues the ALJ found with Dr. Blemur's opinion. The ALJ here, unlike the one in *Schink*, also found that Dr. Blemur's opinion was inconsistent with other evidence in the record. Although Bullard identifies other, unmentioned evidence, when an ALJ articulates specific legally sufficient justifications to discredit an opinion, the Court may not second guess those decisions. *Hunter*, 808 F.3d at 823. In this case, the ALJ's reasons are legally sufficient and there is no merit to Bullard's contrary contention.

Finally, the ALJ's allocation of "significant weight" to Dr. Donshik's opinion is also supported by substantial evidence. Bullard argues the ALJ's consideration of Dr. Donshik's opinion that he was "employable without restriction" is improper because it is an issue reserved for the ALJ. The Undersigned disagrees with Bullard's comparison. If a doctor opines that a claimant is "disabled," then she must provide specifics about why the claimant is disabled. In contrast, a doctor need not offer explanation when saying that there are no issues with a claimant returning to work because the explanation is accounted for in the opinion -- there are no impairments that would preclude work. *Cf. Bryant v. Colvin*, No. CV 15-0167-M, 2015 WL 6457574, at *2 (S.D. Ala. Oct. 26, 2015), aff'd, 661 F. App'x 686 (11th Cir. 2016) (in denying claimant's motion, considering the fact that

"the Doctor found that [the claimant] had reached maximum medical improvement and placed no work restrictions on him").

Bullard's other complaint -- that the additional MRI would have possibly changed Dr. Donshik's opinion -- is mere speculation. *See Moore*, 405 F.3d at 1213 ("[R]ather than pointing to medical evidence that conflicts with the ALJ's RFC determination, [the claimant] argues inferentially that based on their evaluations, [her] physicians would most likely disagree with the ALJ's findings . . . . [T]his sort of extrapolation and conjecture remains insufficient to disturb the ALJ's RFC determination, where it is supported by substantial evidence.").

As noted by the Commissioner in her response, the ALJ found that Dr. Donshik's opinion was consistent with his treatment notes that, despite Bullard's subjective complaints, he "walked without difficulty, maintained normal coordination, had full cervical spine motion, had no thoracolumbar spine deformity, could heel and toe walk appropriately, and had no sensory or motor deficits of the lower extremities." [ECF No. 14 (citing R. 625; 731; 803)].

For these reasons, the ALJ's evaluation of each of the four medical sources is supported by substantial evidence and there is no basis for remand on this ground.

**B.**     *The ALJ's Assessment of Bullard's Credibility is Supported by Substantial Evidence*

Bullard next claims the ALJ erred in evaluating "[his] subjective symptoms and limitations" and alleges this error "resulted in a flawed disability determination." [ECF

No. 13]. Bullard's allegations of error can be grouped into two categories: (1) the ALJ's finding that Bullard's hearing and evidentiary representations were inconsistent; and (2) the ALJ's finding that Bullard's work history and treatment history undermined his statements concerning the severity of his symptoms. *Id.* The Commissioner argues that the ALJ is not required to cherry pick evidence or draw inferences in Bullard's favor and provides myriad examples from the hearing testimony and the record evidence, which she claims amply support the ALJ's decision. [ECF No. 14].

Although it is a focus of Bullard's argument, the ALJ's discussion of the inconsistencies within Bullard's allegations is marginal in the context of her larger discussions concerning Bullard's work and treatment history. The ALJ first notes that Bullard "suggested at the hearing that he was unable to perform any chores" but elsewhere in the record "acknowledged doing such chores as washing dishes, dusting, and doing small loads of laundry." (R. 801 (citing R. 372)). Further, there was a moment of internal inconsistency within the hearing where Bullard claimed he mowed his lawn "in pieces," and later stated that he did not mow his lawn at all. (R. 803).

Despite claiming that these are not actual inconsistencies and identifying other records that corroborate his subjective statements, Bullard cannot escape the fact that the ALJ accurately stated the evidentiary inconsistencies. In Bullard's hearing testimony, he stated that his daughter "comes and helps [him] at times" with shopping, "comes and helps [him clean his house]," and "helps [him] with the laundry." (R. 828; 830). Yet, as the

ALJ notes, in an earlier submission, Bullard stated he "can prepare a simple meal, perform household chores such as . . . doing small loads of laundry [and] can shop for groceries." (R. 372). These statements imply a much-more-active lifestyle than that alleged by Bullard at the hearing.

In the testimony surrounding the other identified inconsistency, at the hearing, Bullard testified "I try to cut the yard, but I have to do it in pieces, you know[,]" (R. 828), and then later testified "I have to get a sit-down mower[,] '[c]ause I have to get the guy to cut the yard[;] I don't normally cut my yard." (R. 829-30). Certainly, this is only a minor inconsistency (which is likely why it received only a cursory mention in the ALJ's analysis), but it is still an inconsistency.

At bottom, both statements are accurate, and they constitute identified inconsistencies in Bullard's allegations concerning the severity of his symptoms and the impact his symptoms have on his daily life.

In the other area about which Bullard alleges error, he cites to MRIs, medical findings, and subjective complaints made at doctor's appointments, and then offers his personal opinion about how this evidence should have been considered. What Bullard does not do is explain how the considered evidence is not substantial.

In the ALJ's analysis, she thoroughly examines the record evidence and provides multiple grounds for discrediting Bullard's subjective testimony. Specifically, the ALJ highlights Bullard's continued employment in a physically demanding job for years after

his complaints began. In the same vein, she notes that, although Bullard claims to have retired due to back problems, this was inconsistent with the relevant medical records from that timeframe, which did not show a worsening condition. She then notes how one of his treating doctors, Dr. Donshik, found that Bullard was employable without restriction for months after his alleged disability onset date.

Further, the treatment records reveal multiple instances of Bullard walking with a normal gait and without difficulty, maintaining normal function in his neck and extremities, unremarkable findings regarding his extremities, and admitted non-use of the cane that he had personally requested. (R. 800-01). Bullard's attacks on this evidence are little more than the identification of other evidence that he believes is important or alternative theories concerning the value of the evidence.

"Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the records that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Bullard argues that the record confirms that he cannot function at the levels required by the ALJ's RFC. [ECF No. 13]. In his view, the sections he identified prove the record is inconsistent with the ALJ's findings. However, because Bullard has failed to show why the sections the ALJ identified do not constitute substantial evidence, his argument fails.

Although Bullard characterizes his argument as a claim that there is a lack of

substantial evidence, the argument is more correctly summarized as a request for the Court to reweigh the evidence presented to the ALJ. This is not the standard.

While Bullard is correct that there is evidence unmentioned by the ALJ that supports Bullard's position, there also is evidence unmentioned by the ALJ which contradicts Bullard's position, and there is evidence mentioned by the ALJ which both supports and contradicts her position. But "the ALJ [is not required] to 'specifically refer to every piece of evidence in [her] decision,' so long as the decision is sufficient to allow [the Court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec*, 355 F. App'x 260, 263 (11th Cir. 2009) (quoting *Dyer*, 395 F.3d at 1211).

It is not within this Court's purview to evaluate the entire record and reweigh the evidence -- even if it preponderates against the ALJ's findings -- because, as long as those findings are supported by substantial evidence, then the ALJ's decision will not be disturbed.

At bottom, the ALJ's decision to discredit Bullard's subjective complaints is supported by substantial evidence. An ALJ is permitted to discredit a claimant's allegations of completely disabling symptoms, provided that the ALJ "articulate[s] explicit and adequate reasons" for so doing. *Dyer*, 395 F.3d at 1210. "The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F.

App'x 935, 939 (11th Cir. 2011). The ALJ's reasons for discounting Bullard's testimony were plenary and she was not clearly wrong in finding Bullard's self-serving statements lacked support and were, in fact, contradicted by earlier statements and the objective medical treatment records. *Maddy v. Berryhill*, No. 17-80150, 2018 WL 1863610, at *4 (S.D. Fla. Mar. 23, 2018) (holding it was appropriate for ALJ to discount claimant's statements when it was inconsistent with the claimant's conservative treatment, intermittent reports of pain, and noted improvement in some areas with treatment).

For these reasons, there is no basis for remand on this issue.

## VI.    Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Bullard's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See*

29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on July 18, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All counsel of record